**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

**PITTSBURGH**

| | | |
|---|---|---|
| ROBERT HARVEY III, | ) | |
| | ) | |
| Plaintiff, | ) | 2:23-CV-00536-MJH |
| | ) | |
| vs. | ) | |
| | ) | |
| TECHNIMARK HEALTHCARE, LLC, | ) | |
| SCOTT IRVINE, | ) | |
| | ) | |
| Defendants, | | |

**<u>MEMORANDUM OPINION</u>**

Pro se Plaintiff, Robert Harvey III, filed the present lawsuit against Defendants, Technimark LLC, and Scott Irvine, on November 10, 2022. (ECF No. 1). On March 28, 2023, Mr. Harvey filed an Amended Complaint. (ECF No. 6). On October 3, 2023, Mr. Harvey filed a five-count Second Amended Complaint against Defendants. The claims contained in the Second Amended Complaint are as follows: (1) age discrimination, under the Age Discrimination in Employment Act ("ADEA") and the Pennsylvania Human Relations Act ("PHRA"); (2) breach of contract, based upon failure to perform various contractual obligations; (3) violations of the Equal Pay Act of 1963 ("EPA"); (4) retaliation, based upon Mr. Harvey's complaints about Technimark's failure to pay him relocation funds; and (5) race discrimination in violation of Title VII and the PHRA. Presently, before the Court, is Defendants' Motions to Dismiss Mr. Harvey's Amended Complaint (ECF Nos. 31 & 33). The Motions to Dismiss have been fully briefed and are ripe for decision.

1

For the reasons below, Defendants' Motions to Dismiss will be granted in full.

## I.     Statement of Facts

Pro se Plaintiff, Robert Harvey III, a Black man, was 68 years old when he was hired by Defendant, Technimark LLC ("Technimark"). (ECF No. 30, at 6). On August 23, 2021, Mr. Harvey had an in-person interview with Technimark, for a position as a Tool and Dye Mold Maker, at Technimark's facility in Latrobe, Pennsylvania. (*Id.* at 3, 5). Mr. Harvey alleges that, during the interview, he entered an oral agreement as to the terms of his employment with Technimark. (*Id.* at 4). Mr. Harvey does not indicate who he made such agreement with. The alleged oral agreement involved Mr. Harvey's schedule, assignment to Crew Group "B," hourly pay-rate, benefits, and relocation assistance. (*Id.*). On August 25, 2021, Technimark sent Mr. Harvey an offer letter, which Mr. Harvey alleges had different terms than the oral agreement he had made at his interview. (*Id.*). Despite the observed differences in the offer letter's terms, Mr. Harvey signed the letter. (*Id.*).  In referencing the relocation funds available to Mr. Harvey, the offer letter states, "[Mr. Harvey] will receive $6,500.00 (taxed accordingly unless you bill directly with relo-service) *with a payback clause* should you leave Technimark (100% if you leave in year-one and 50% in year two)." (ECF No. 32-1). The offer letter did not contain a date for when the relocation funds would be paid to Mr. Harvey. (ECF No. 30, at 17). Mr. Harvey alleges that, after signing the offer letter, Mr. Harvey moved out of the home that he was living in, located at 1724 Arthur Dr. NW, Warren OH 44485, and moved into one of his vacant rental properties, located at 843 Utica Court NW, Warren OH 44485. (*Id.* at 9).

On September 15, 2021, Mr. Harvey began working at Technimark in Latrobe, Pennsylvania. (*Id.* at 10). Mr. Harvey avers that Technimark should have paid him the relocation funds on September 15, 2021, upon his arrival to work, because he had "completed his performance per

contractual agreement." (*Id.*). The only support that Mr. Harvey provides that he relocated or that he intended to relocate was a hotel receipt for a one-night stay in Latrobe, Pennsylvania. (ECF No. 35-2). On September 16, 2021, Defendant, Scott Irvine, told Mr. Harvey the relocation funds would be included in his first paycheck, with payroll taxes deducted, unless Mr. Harvey submitted an invoice or estimate from a moving company for direct reimbursement. (*Id.*). On September 16, 2021, Mr. Harvey found out that his schedule had been changed from the twelve-hour afternoon shift (the shift Mr. Harvey claims he agreed to work) to the twelve-hour day shift. (*Id.* at 11). Mr. Harvey claims that Kevin and Mark, younger and white coworkers, were only required to work eight-hour shifts, as opposed to Mr. Harvey, who worked a twelve-hour shift. (*Id.*). Mr. Harvey further alleges that Technimark's tool supervisor, Andy Robertson, informed Mr. Harvey that he could not operate the overhead crane until he watched a safety video. (*Id.*). Mr. Harvey alleges that Technimark does not typically require watching a safety video before operating the overhead crane. (*Id.*).

When Mr. Harvey received his first paycheck, the relocation funds were not included. (*Id.* at 12). After inquiring into the absence of the relocation funds in his first paycheck, Mr. Harvey alleges that Mr. Irvine stated, "you will have to wait until the next paycheck distribution, October 8, 2021, unless [Mr. Harvey] submitted a written quotation or invoice from the Moving Company defendants could not have the funds released immediately." (*Id.* at 13). Mr. Harvey alleges that he then met with Mr. Robertson and Mr. Irvine, and Mr. Irvine agreed that the funds would be distributed to R.H. III Moving and Relocation Company, after the company provided Technimark with the proper documentation. (*Id.* at 13-14). Mr. Harvey claims that he submitted the requested documentation the next day, September 28, 2021. (*Id.* at 14). Mr. Harvey alleges that, on September 29, 2021, a Technimark Human Resources employee contacted R.H. III

Moving and Relocation Services, and informed the company's receptionist, Ariannah Warfield, that "the issues had been resolved." (*Id.* at 14). On September 30, 2021, Mr. Harvey was informed by Mr. Irvine, that Technimark would not distribute the relocation funds to R.H. III Moving, because Mr. Harvey had an ownership interest in the company, and it is not an independent moving company. (*Id.* at 15).

On October 1, 2021, Mr. Harvey met with Mr Irvine, and demanded that he be paid the relocation funds. (*Id.* at 21). Mr. Harvey alleges that, during this meeting, Mr. Irvine said, "I guess the means you voluntarily quit." Mr. Irvine allegedly told Mr. Harvey that he was committing tax fraud, and relayed that the reimbursement funds would only be made to an independently owned moving company. (*Id.*). Mr. Harvey then asked Technimark to call the police. (*Id.* at 22). Once the police arrived, Mr. Harvey was instructed to get his tools and leave Technimark's property. (*Id.*).

## II.      Relevant Legal Standards

### A.  (12)(b)(6) Standard

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Supreme Court clarified that this plausibility standard should not be conflated with a higher probability standard. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quoting *Graff v. Subbiah Cardiology Assocs., Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016).

Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997). The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail; but rather, whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000).The purpose of a motion to dismiss is to "streamline[] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

Furthermore, "in evaluating a motion to dismiss, courts are not limited to the complaint, but may also consider evidence integral to or explicitly relied upon therein." *Tanksley v. Daniels*, 902 F.3d 165, 172 (3d Cir. 2018) (internal quotations omitted). "In deciding a Rule

12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted).

### B.  Leave to Amend

In a civil rights case, when the court grants a motion to dismiss for a failure to state a claim, the court must offer the plaintiff leave to amend, even if it was not requested by the plaintiff, "unless doing so would be inequitable or futile." *Phillips*, 515 F.3d at 246; *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007).

## III.    Discussion

### A.  Age and Race Discrimination

At Counts I and V of the Second Amended Complaint, Mr. Harvey brings age and race discrimination claims under Title VII, the ADEA, and the PHRA, against Technimark and Mr. Irvine. (ECF No. 30, at 6, 23). Mr. Harvey alleges that Defendants discriminated against him, based upon his age and race, because Defendants failed to distribute relocation funds to Mr. Harvey, changed his agreed upon schedule, and did not provide him with healthcare benefits. (*Id.* at 6-15).

To establish an age or race discrimination claim, Mr. Harvey must plead sufficient facts to show that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for his position; and (4) the adverse action arose under circumstances giving rise to an inference of age or race discrimination. *See Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003) (describing the prima facie burden for race discrimination); *See*

6

*also Dodson v. Coatesville Hosp. Corp.*, 773 F. App'x 78, 80 (3d Cir. 2019) (describing the prima facie burden of age discrimination.)

### i.       <u>Technimark</u>

Technimark argues that Mr. Harvey fails to plead sufficient facts to establish that a causal connection exists between the alleged adverse employment actions and his age or race. (ECF No. 32, at 6). Mr. Harvey argues that Techinmark discriminated against him, based upon his age and race, when they did not disburse the relocation funds to him, changed his schedule, and did not provide him with healthcare benefits. (*Id.* at 6-15). In support of his argument, Mr. Harvey alleges that two younger, white coworkers, were required to work eight-hour shifts, while he was required to work twelve-hour shifts. (*Id.* at 11).

Mr. Harvey does not allege any facts sufficient to establish that a causal connection exists between his age or race and Technimark's failure to disburse the relocation funds, the alleged schedule changes, the failure to provide health care benefits, and/or the circumstances surrounding his departure from Technimark. Mr. Harvey relies primarily on the fact that he is a 68-year-old, Black man, to support that these actions occurred because of his age and/or race. Such conclusory statements are not sufficient to establish that it is plausible that these alleged actions occurred because of his age or race. *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997).

Moreover, the comparator evidence, that Mr. Harvey alleges in his Second Amended Complaint, that Kevin and Mark, the younger, white employees at Technimark, is also insufficient to establish that it is plausible that a causal connection exists between the alleged actions and Mr. Harvey's age or race. Kevin and Mark were not similarly situated to Mr. Harvey.

Mr. Harvey pleads that Kevin was an apprentice at Technimark – a different position than Mr. Harvey, who was hired as a Tool and Dye Mold Maker. (*Id.* at 7). Mr. Harvey does not specify Mark's position at Technimark. *See Parker v. Farley,* 625 F. App'x 77, 82 (3d Cir. 2015) (noting that comparators must be similarly situated "in all relevant respects" to support any inference of race or age discrimination). Further, the only differential treatment that Mr. Harvey alleges was that Mark and Kevin worked eight-hour shifts while Mr. Harvey worked twelve-hour shifts. However, Mr. Harvey pleads that he was hired to work twelve-hour shifts. (ECF No. 30, at 4-5). Mr. Harvey's 12-hour work day was a result of the agreed upon terms of his employment, not any differential treatment from Technimark.

As Mr. Harvey fails to plead sufficient facts to establish that it is plausible that a causal connection exists between the alleged adverse actions and his race and/or age, Tehnimark's Motion to Dismiss will be granted as to all race and age discrimination claims brought against it under Title VII, the ADEA, and the PHRA, at Counts I and V of the Second Amended Complaint. As the Court cannot say that amendment would be inequitable or futile, Mr. Harvey will be granted leave to amend regarding these claims.

### ii.    <u>Mr. Irvine</u>

Mr. Harvey brings age and race discrimination claims under Title VII, the ADEA, and the PHRA against Mr. Irvine. (ECF No. 30, at 6,23). Mr. Irvine argues that individual employee liability does not exist under Title VII and the ADEA. (ECF No. 34, at 5). Mr. Irvine further argues that Mr. Harvey fails to establish a PHRA claim, because Mr. Harvey fails to allege that Mr. Irvine is his supervisor. (*Id.*). Mr. Harvey argues that Mr. Irvine discriminated against him based on his age and race when he did not disburse the relocation funds to him, changed his schedule, and did not provide him with healthcare benefits. (*Id.* at 6-15).

a.  *Title VII and the ADEA Claims*

Individual employee liability does not exist under Title VII and the ADEA. *Hill v. Borough of Kutztown,* 455 F.3d 225, 246 n.29 (3d Cir 2006) ("[Plaintiff] did not bring an ADEA claim against [the individual employee] himself, nor could he have because the ADEA does not provide for individual liability.") (collecting cases holding that there is no individual liability under the ADEA); *Kachmar v. SungGuard Data Sys., Inc.*, 109 F.3d 173, 184 (3d Cir. 1997) (affirming dismissal of individual defendants and holding that Title VII does not permit individual employee liability). Mr. Irvine is an individual; therefore, he cannot be liable under Title VII and the ADEA.

Thus, Mr. Irvine's Motion to Dismiss, as to all Title VII and ADEA claims brought against him, at Counts I and V of the Second Amended Complaint, will be granted. As amendment to these claims is futile, the Title VII and ADEA claims brought against Mr. Irvine, at Counts I and V of the Second Amended Complaint, will be dismissed with prejudice.

b.  **PHRA Claims**

The PHRA provides for individual liability only for supervisors who "aid, abet, incite, compel or coerce doing of any . . . unlawful discriminatory practice." 43 Pa. Cons. Stat. § 955 (e); *See also Reganick v. SW. Veterans' Ctr.*, 2008 WL 768423, at *8 (W.D. Pa. 2008) (citing *Dici v. Pa.*, 91 F.3d 542, 553 (3d Cir. 1996) (holding that only supervisory employees may be liable for "aiding and abetting" an employer's alleged discriminatory practice under the PHRA). Mr. Harvey does not allege that Mr. Irvine was one of his supervisors. Mr. Harvey only pleads that Mr. Irvine was a Human Resources Manager, whom he met on multiple occasions to discuss disbursement of the relocation funds. Further, even if Mr. Irvine was one of Mr. Harvey's

supervisors, Mr. Harvey fails to plead sufficient facts to establish that Mr. Irvine aided and abetted Technimark in carrying out the alleged discriminatory actions.

Thus, Mr. Irvine's Motion to Dismiss Mr. Harvey's PHRA claims brought against him, at Count I and V of the Second Amended Complaint, will be granted. As the Court cannot say that amendment would be inequitable or futile, Mr. Harvey will be granted leave to amend his PHRA claims against Mr. Irvine.

### B.  Breach of Contract

At Count II of the Second Amended Complaint, Mr. Harvey brings breach of contract claims against Technimark and Mr. Irvine, alleging that the Defendants breached written, verbal, and implied contracts. (ECF No. 30, at 3, 12).

To state a claim for breach of contract in Pennsylvania, a plaintiff must plead: "(1) the existence of a contract, including its essential terms; (2) a breach of duty imposed by the contract; and (3) resultant damages." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (quoting *CoreStates Bank, N.A. v. Cutillo,* 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)). To establish the existence of a contract, a plaintiff must show the three essential elements of contract formation – offer, acceptance, and consideration. *See Kowal v. Ferndale Area Sch. Dist.*, 2019 WL 96066 (W.D. Pa. 2019). To sustain a breach of contract claim, there must be privity of contract between the contracting parties. *See Deynzer v. Columbia Gas of Pa., Inc.*, 875 A.2d 298, 301 (Pa. Super. Ct. 2005) ("[P]rivity of contract is personal privity, and is confined to the persons of the contracting parties.").

### i.    <u>Technimark</u>

Tehnimark argues that all the alleged breach of contract claims brought against it fail, because the alleged verbal contracts are not enforceable; there is no plausible breach of contract claim based on the written offer letter; and that no two-year implied contract existed. (ECF No. 32, at 9, 10, 12). Mr. Harvey argues that all of the alleged contracts existed and are enforceable against the Technimark. (ECF No. 30, at 15).

There are two recognizable contracts alleged by Mr. Harvey in his Second Amended Complaint. The first alleged contract was the verbal agreement that Mr. Harvey alleges was made during his interview for employment at Technimark. During this interview, Mr. Harvey alleges he verbally agreed, with an unnamed individual, that he would work the afternoon shift on Crew Group "B," that he would work 4 days a week, with 3 days off, and that he would be paid a $7,500 relocation fee. (ECF No. 30, at 4). The next alleged contract was the written offer letter. The written offer letter's terms indicated that Mr. Harvey would receive relocation assistance in the amount of $6,500, taxed accordingly, unless a bill was sent to Technimark from a relocation service. (ECF No. 31-1). The offer letter also contained a payback clause, which indicated that if Mr. Harvey left Technimark within a year, he would have to pay back the entire sum of the relocation funds, and if he left within two years, then he would have to payback half of the relocation funds. (*Id.*). Additionally, the offer letter contained language that waived any prior offers or agreements. (*Id.*). Specifically, the letter stated, "[b]y signing below, you are confirming your acceptance of the offer letter and are verifying that no other commitments regarding this offer or future payments or arrangements have been made to you by anyone at Technimark." (*Id.*).

Here, the alleged verbal agreements made during Mr. Harvey's interview for employment at Technimark are not enforceable. Mr. Harvey fails to plead who offered him employment, who

accepted the offer, or if there was any exchange of consideration between himself and the

unnamed Technimark employee who interviewed him. At the time of the interview, Mr. Harvey

had not been offered employment, so no consideration was present. *See Encore Int'l Inc. v.*

*Downey*, 343 F. Supp 3d 459 (E.D. Pa. 2018) (citing *Lackner v. Glosser*, 892 A.2d 21, 30 (Pa.

Super. Ct. 2006) ("Where. . . there is no agreement or even discussion as to any of the essential

terms of an alleged bargain, such as . . . consideration, the 'agreement' is too indefinite for a

party to reasonably believe that it can be enforceable in an action at law."). At most, the alleged

verbal agreements were agreements to agree or offer employment in the future. Pennsylvania

courts have held that such agreements are unenforceable. *See Chanel Home Ctrs., Div. of Grace*

*Retail Corp v. Grossman*, 795 F.2d 291,298 (3d Cir. 1986) ("It is hornbook law that evidence of

preliminary negotiations or an agreement to enter into a binding contract in the future does not

alone constitute a contract."); *Highland Sewer and Water Auth. v. Forest Hills Municipal Auth.*,

797 A.2d 385, 390 (Pa. Commw. Ct. 2002) ("An agreement to agree is incapable of

enforcement[.]") Further, Mr. Harvey agreed to waive any prior agreements when he signed the

written offer letter for employment at Technimark. Thus, the alleged verbal agreement made

during Mr. Harvey's interview for employment is not enforceable.

Next, Mr. Harvey alleges that Techimark breached the contract that was formed when he

signed the written offer letter, because he was not provided with health care benefits on October

1, 2021, and because the relocation funds were never distributed to him. Mr. Harvey argues that

the relocation funds were due to him on September 15, 2021, the day that he began working at

Technimark. Mr. Harvey does not allege that there was an agreed upon a date that the funds

would be distributed to him. Moreover, the written agreement does not specify a date when the

relocation funds would be paid. Mr. Harvey assumed that he would receive the relocation funds

on his start date, based on his prior experience in the industry, and representations made to him by Mr. Moore, a third-party recruiter. Mr. Harvey never avers that Technimark agreed to pay him said funds on his start date. Additionally, in Mr. Harvey's Second Amended Complaint, he does not plead any terms from the written letter that support his claim of repudiation or breach of any of the written offer letter based upon conversations with Mr. Irvine about payment of the relocation funds or the refusal of Technimark to pay the funds to R.H. III Moving and Relocation Company. Thus, Mr. Harvey fails to plead sufficient facts to establish that Technimark breached any duty imposed by the written offer letter.

Moreover, Mr. Harvey did not suffer any damages from the alleged breach of the written agreement. When Mr. Harvey signed the written offer of employment, he agreed to the payback clause that was included in the written offer letter. The payback clause held, that if Mr. Harvey left Technimark within a year, he would have to pay back the entire sum of the relocation funds. Mr. Harvey worked at Technimark from September 15, 2021 to October 1, 2021, which is less than one month. Consequently, he would have been required to pay back the entire sum of the relocation funds if he had received them. Thus, Mr. Harvey fails to plead facts to establish that he suffered any damages because of Technimark's failure to distribute the relocation funds to him.

Similarly, Mr. Harvey fails to plead sufficient facts to establish that Technimark's failure to provide him health care benefits by October 1, 2021 is a breach of contract, because he fails to allege that he suffered any damages or was ever refused said benefits. In Mr. Harvey's Second Amended Complaint, he claims, in a conclusory fashion, that he did not receive his health care benefits on October 1, 2021. October 1, 2021 was his final date of employment. As such, prospective health benefits were not at issue once he no longer worked for Technimark. No

benefits were due with no continuing employment. As such, Mr. Harvey fails to plead sufficient facts to establish that Technimark had any duty to provide health care benefits after he was no longer an employee, or that he suffered any damages from Technimark's alleged failure to provide him with healthcare benefits on October 1, 2021.

Finally, Mr. Harvey alleges that Techinmark breached an implied contract to employ him for two years, formed by the language of the written offer letter, discussing repayment of the relocation funds. In Mr. Harvey's Second Amended Complaint, he acknowledges that Pennsylvania is an at-will employment state. (ECF No. 30, at 12). In at-will employment states, unless otherwise provided in a written employment agreement, or by applicable law, employment may be terminated at any time, with or without notice. *See Schoch v. First Fidelity Bank Corp.*, 912 F.2d 654, 660 (3d Cir. 1990). The written offer letter does not contain any term or promise to employ Mr. Harvey for any period of time, nor does Mr. Harvey plead any other express term that specified any guaranteed term of employment. The only mention of time within the written offer was the payback clauses related to repayment of the relocation funds. Thus, there was no express two-year employment contract.

Additionally, there is no implied contract created by the language of the written offer letter. Mr. Harvey does not plead any facts to establish that an offer for a two-year term of employment was ever extended to him, that he accepted any such offer, or that there was any consideration present. As stated in the above paragraph, the only mention of any sort of time period was in the written offer letter's payback clause, which clearly does not establish any sort of two-year employment term. As such, Mr. Harvey fails to plead sufficient facts to establish that an implied contract for two years of employment at Technimark existed.

Further, where no express or implied contract exists, the only other premise upon which Mr. Harvey could establish a right to employment beyond his actual period of employment would be under the Pennsylvania exception to the employment at-will doctrine. In some cases, Pennsylvania courts have recognized a narrow exception to the employment at-will doctrine where an employee must show that they experienced an "extraordinary" benefit or detriment. *Kane v. Platinum Healthcare LLC*, 2011 WL 248494, at *4 (E.D. Pa. 2011) (citing *Martin v. Safeguard Scientifics Inc.*, 17 F. Supp. 2d 357, 369 (E.D. Pa. 1998)). However, Mr. Harvey does not plead that he ever relocated to Latrobe to work at Technimark, he only pleads that he moved from his residence in Warren, Ohio, to another residence in the same town. In his Response, Mr. Harvey attaches a hotel receipt as support that he did in fact relocate or plan to relocate to Latrobe, Pennsylvania. (ECF No. 35-2).  But the hotel receipt indicated that Mr. Harvey only stayed one night in the hotel. (*Id.*). The allegations within the Second Amended Complaint do not sufficiently allege any facts to support that he suffered any "extraordinary" detriment. Therefore, Mr. Harvey does not plead sufficient facts to establish that any implied two-year employment contract existed, much less whether Technimark breached any such contract.

Thus, as Mr. Harvey fails to plead sufficient facts to establish any breach of contract claim, Technimark's Motion to Dismiss the breach of contract claims brought against it, at Count II of the Second Amended Complaint, will be granted. As the Court cannot say that amendment would be inequitable or futile, Mr. Harvey will be granted leave to amend regarding these breach of contract claims brought against Technimark.

### ii.    Mr. Irvine

Mr. Harvey brings the same breach of contract claims against Mr. Irvine. However, in Mr. Harvey's Second Amended Complaint, he does not plead that Mr. Irvine was a party, in his

individual capacity, to any of the alleged contracts. Accordingly, there is no privity of contract between Mr. Irvine and Mr. Harvey; and thus, Mr. Irvine does not owe Mr. Harvey any duty under the alleged contracts.

Thus, Mr. Harvey fails to plead sufficient facts to establish that Mr. Irvine breached any of the alleged contracts. Mr. Irvine's Motion to Dismiss the breach of contract claims brought against him, at Count II of the Second Amended Complaint, will be granted. As the Court cannot say that amendment would be inequitable or futile, Mr. Harvey will be granted leave to amend regarding his breach of contract claims brought against Mr. Irvine.

### C.  Equal Pay Act

At Count III of the Second Amended Complaint, Mr. Harvey brings an EPA claim against Technimark and Mr. Irvine. (ECF No. 30, at 20).

### i.  <u>Technimark</u>

Technimark argues that Mr. Harvey fails to bring an EPA claim, because he does not reference any sex-based discrimination within his Second Amended Complaint. (ECF No. 32, at 8). Mr. Harvey argues that Technimark paid him less wages than other equally skilled employees. (ECF No. 30, at 20).

The EPA applies only to "sex-distinction-based-pay-discrimination." *Alija-Iz v. U.S. V.I. Dep't of Educ.*, 626 F. App'x 44, 47 (3d Cir. 2015). Mr. Harvey does not plead any sex-based discrimination within his Second Amended Complaint.

As such, Technimark's Motion to Dismiss Mr. Harvey's EPA claim brought against it, at Count III of the Second Amended Complaint, will be granted. As the Court cannot say that

amendment would be inequitable or futile, Mr. Harvey will be granted leave to amend his EPA claim against Technimark.

### ii. **Mr. Irvine**

Mr. Irvine argues that Mr. Harvey cannot establish an EPA claim against him, because individual liability does not exist under the EPA. (ECF No. 34, at 5).

Individual liability does not exist under the EPA. *Wardlaw v. City of Phila. Street's Dep't*, 378 F. App'x 222, 225 (3d Cir. 2010) (affirming dismissal of individual defendants under Title VII and the EPA, because there is no individual liability under the statutes). Here, Mr. Harvey brings an EPA claim against Mr. Irvine, an individual, which is not available under the EPA.

Thus, Mr. Irvine's Motion to Dismiss, as to Mr. Harvey's EPA claim brought against him, at Count III of the Second Amended Complaint, will be granted. As further amendment will be futile, said claim will be dismissed with prejudice.

### D. Retaliation

At Count IV of the Second Amended Complaint, Mr. Harvey brings retaliation claims against Technimark and Mr. Irvine, based upon his requests to be paid relocation funds, resulting in wrongful discharge. (ECF No. 30, at 20). Mr. Harvey does not specify what law he brings such retaliation claims under. Technimark and Mr. Irvine assume that Mr. Harvey is attempting to bring a retaliation claim under the Pennsylvania Wage & Payment Collection Law ("WPCL"), and they argue that retaliation claims and wrongful discharge claims are not available under the statute. (ECF No. 32, at 8); (ECF No. 34, at 6).

Federal courts in Pennsylvania have consistently held that the WPCL does not provide a cause of action for retaliation, nor does Pennsylvania law recognize a common law wrongful discharge claim based on complaints regarding a failure to pay under the WPCL. *See Donaldson v. Informatica Corp.*, 792 F. Supp.2d 850, 860 (W.D. Pa. 2011) (holding that the WPCL does not provide a cause of action for retaliatory wrongful discharge).

As the retaliation claims that Mr. Harvey brings against Technimark and Mr. Irvine are not actionable under Pennsylvania law, Technimark and Mr. Irvine's Motions to Dismiss the retaliation claims brought at Count IV of the Second Amended Complaint, will be granted. As a retaliation claim against Technimark and Mr. Irvine under the WPCL is not actionable, amendment would be futile. Mr. Harvey will not be granted leave to amend regarding his retaliation claims under the WPCL against Technimark and Mr. Irvine. To the extent that any other legally actionable retaliation claims exist, Mr. Harvey will be granted leave to amend.

**IV.    Conclusion**

For the reasons stated above, Technimark's and Mr. Irvine's Motions to Dismiss will be granted in full.

Defendants' Motions to Dismiss will be granted without leave to amend as follows:

- The Second Amended Complaint's age discrimination claims under the ADEA against Mr. Irvine, at Count I;

- The Second Amended Complaint's race discrimination claims against Mr. Irvine under Title VII, at Count V;

- The Second Amended Complaint's EPA claim against Mr. Irvine, at Count III; and

- The Second Amended Complaint's retaliation claims against Technimark and Mr. Irvine under the WPCL, at Count IV.

Defendants' Motions to Dismiss will be granted with leave to amend as follows:

- The Second Amended Complaint's age discrimination claim under the ADEA against Technimark, at Count I;

- The Second Amended Complaint's race discrimination claim under Title VII against Technimark, at Count V;

- The Second Amended Complaint's breach of contract claims against Technimark and Mr. Irvine, at Count II;

- The Second Amended Complaint's EPA claim against Technimark, at Count III; and

- The Second Amended Complaint's retaliation claims against Technimark and Mr. Irvine only as to any other legally actionable retaliation claims, at Count IV.

A separate order to follow.


DATE: ___3/8/2024_____


Marilyn J. Horan
United States District Judge